**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Jodell Gacy, on behalf of herself and all )   No. 04-CV-1934-PHX-FJM
others similarly situated, )
                                                            )   **ORDER**
                    Plaintiff, )
                                                            )
vs. )
                                                            )
                                                            )
Gammage & Burnham, et al., )
                                                            )
                    Defendants. )
                                                            )

The court has before it defendants' motion for summary judgment (doc. 42), plaintiff's opposition (doc. 54), and defendants' reply (doc. 56); and plaintiff's motion for partial summary judgment (doc. 51), defendants' response (doc. 58), and plaintiff's reply (doc. 63). The court also has before it plaintiff's motion to compel written discovery (doc. 47), defendants' response (doc. 50), and plaintiff's reply (doc. 53).

**I**

Plaintiff Jodell Gacy fell in a department store and sustained injuries for which she was treated by Scottsdale Healthcare. Plaintiff was charged $3,969.00. Plaintiff's health insurance provider paid $1,514.66, leaving a balance of $2,454.34.

Pursuant to A.R.S. § 33-931, Scottsdale Healthcare is entitled to a lien for its charges over "all claims of liability or indemnity" that plaintiff may raise to compensate her for her damages. That lien is enforceable against the "person, firm or corporation that is liable for

1  damages," but is not enforceable against the injured person.   A.R.S. § 33-934(A);

2  Blankenbaker v. Jonovich, 205 Ariz. 383, 387, 71 P.3d 910, 914 (2003).  That is, if plaintiff

3  files a lawsuit against the department store in which she slipped, and the department store is

4  found liable, or if the department store settles with plaintiff for payment, Scottsdale

5  Healthcare could enforce its lien against the department store for the balance of the charges

6  due.  In those instances, plaintiff's ultimate recovery would be reduced by the balance of the

7  charges.

8        To perfect the lien, the health care provider is required to mail a "copy of the claim

9  or lien to the injured person."  A.R.S. § 33-932(C).  Accordingly, defendants, acting as

10  counsel on behalf of Scottsdale Healthcare, mailed the lien notice to plaintiff showing the

11  amount due of $2,454.34, along with a letter of explanation.  Complaint, Exhibits A, B.  Both

12  documents clearly state that "this is not a bill."  The explanation letter states:

13        Under Arizona law, a hospital may record a "lien" in order to recover payment
         of any unpaid portion of the bill out of any future monetary payment or
14       settlement a patient might receive as a result of the accident.  The lien affects
         the settlement and/or damages only and **does not affect your estate or your**
15       **credit rating and is not a lien against your property.**

16  Complaint, Exhibit A (emphasis in original).  The letter also states:

17        Although this lien notification is **NOT** a request that you pay the hospital
         charges directly, the lien may reduce any future monetary payment or
18       settlement you receive as a result of the accident.  Furthermore, you are
         permitted to dispute the validity of the lien amount and a federal law known
19       as the Fair Debt Collections [sic] Practices Act provides the following notice:

20            If you do not dispute the validity of the debt or any portion of it
              within thirty days of this letter, we will assume the debt is valid.
21            If you do dispute the validity of the debt, or any portion of it,
              you may notify us in writing within thirty days of this letter of
22            your dispute.  If you do so, we will send you verification of the
              debt.    This letter is an attempt to collect a debt, and any
23            information obtained will be used solely for that purpose. . . . .

24       *You may still dispute the validity of this debt at a later time even if you do not*
         *notify us of any dispute within 30 days of this letter.*  Again, this is not a
25       request that you pay the hospital's charges.

26  Id. (emphasis in original).

27        Plaintiff claims that the lien notice and explanation letter violate the Fair Debt

28  Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e-g.  Those sections of the

1   FDCPA regulate the actions of "debt collector[s]" with regard to the collection or

2   attempted collection of a "debt."  Therefore, to succeed on her claims, plaintiff must

3   prove that defendants are "debt collectors" collecting or attempting to collect on a

4   "debt."

5                                              **II**

6          The FDCPA defines a "debt collector" as:

7          any person who uses any instrumentality of interstate commerce or the
           mails in any business the principal purpose of which is the collection
8          of any debts, or who regularly collects or attempts to collect, directly
           or indirectly, debts owed or due or asserted to be owed or due another.
9          . . . The term does not include . . . (F) any person collecting or
           attempting to collect any debt owed or due or asserted to be owed or
10         due another to the extent such activity . . . (iii) concerns a debt which
           was not in default at the time it was obtained by such person.
11
    15 U.S.C. § 1692a(6).  "The plain language of § 1692a(6)(F) tells us that an individual
12
    is not a 'debt collector' subject to the [FDCPA] if the debt he seeks to collect was not
13
    in default at the time he purchased (or otherwise obtained) it."  Bailey v. Sec. Nat'l
14
    Servicing Corp., 154 F.3d 384, 387 (7th Cir. 1998).  Defendants argue that no debt
15
    existed, and therefore, the debt could not possibly have been in default.
16
           Plaintiff argues, however, that she owed $668.29 to Scottsdale Healthcare, and
17
    therefore the debt was in default.  Even if the evidence proffered in support of that
18
    argument were admissible, and it is not,[1] it would be insufficient to prevent summary
19
    judgment. Because "default" is not defined in the FDCPA, courts have looked to the
20
    contracts underlying the debt, Hartman v. Meridian Fin. Serv., Inc., 191 F. Supp. 2d
21
    1031, 1044 (W.D. Wisc. 2002), or other applicable statutes, Skerry v. Massachusetts
22
    Higher Educ. Assistance Corp., 73 F. Supp. 2d 47, 53-54 (D. Mass. 1999), for a
23

24         [1] Plaintiff sets forth a Claimant History Report by plaintiff's insurance company to
25  show that plaintiff owes Scottsdale Healthcare $668.29.  This evidence is unaccompanied by
    an authenticating affidavit, and "documents which have not had a proper foundation laid to
26  authenticate them" cannot support, or be relied upon to defeat a motion for summary
    judgment.  Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987).  Because
27  the Claimant History Report fails to comply with Rule 56(e), Fed. R. Civ. P., we cannot
28  consider it.

1   definition.   Plaintiff sets forth no definition for "default" and no rationale for

2   concluding that plaintiff has defaulted on her medical bill by not paying it in full.

3   Therefore, plaintiff failed to show that there is a genuine issue of fact that the debt

4   was in default at the time defendants obtained it and that defendants are "debt

5   collectors."   Accordingly, we grant defendants' motion for summary judgment (doc.

6   42) and deny plaintiff's motion for summary judgment (doc. 51).

**III**

8          Plaintiff's claims fail for the alternative and independent reason that she fails

9   to show that defendants are collecting on a "debt" as defined by the FDCPA.   The

10   FDCPA is "designed to protect consumers who have been victimized by unscrupulous

11   debt collectors, regardless of whether a valid debt actually exists."   Baker v. G.C.

12   Serv. Corp., 677 F.2d 775, 777 (9th Cir. 1982).   Accordingly, debt is defined in

13   relevant part as the "obligation or alleged obligation of a consumer to pay money."

14   15 U.S.C. § 1692a(5).   Therefore, to show that defendants attempted to collect on a

15   "debt," plaintiff need only show that defendants alleged that she is obligated to pay

16   money to Scottsdale Healthcare.   However, plaintiff argues that she actually is

17   obligated to pay money to Scottsdale Healthcare.

18          Plaintiff first contends that the lien represents a debt because if she were to

19   succeed in recovering against the person or entity that caused her harm, the potential

20   recovery would be reduced pursuant to the lien.   However, plaintiff will not be

21   required to pay defendants money because the lien cannot be enforced against the

22   injured party. A.R.S. § 33-934(A); Blankenbaker v. Jonovich, 205 Ariz. at 387, 71

23   P.3d at 914.   That plaintiff would be negatively affected by the lien enforced against

24   a prospective tortfeasor does not transform that lien into a debt against plaintiff as

25   defined in the FDCPA because plaintiff will not be forced to pay money to Scottsdale

26   Healthcare.

27          Plaintiff also argues that a debt exists because, assuming that the prospective

28   tortfeasor paid plaintiff in satisfaction of her claim, but failed to comply with the lien,

- 4 -

1   plaintiff would be liable to Scottsdale Healthcare for the value of the lien. But if the

2   tortfeasor fails to comply with the lien, the hospital's sole lien remedy is an action to

3   enforce it against the tortfeasor or his insurer under A.R.S. § 33-934. To the extent

4   that plaintiff could be liable, that liability would not arise from the lien because the

5   lien cannot be enforced against the injured party. In any event, to the extent a

6   separate theory of liability exists, plaintiff fails to assert it.

7          Plaintiff also argues that a debt exists because she has a direct contractual

8   liability to Scottsdale Healthcare for the balance of her health care bill. While this

9   may be so, plaintiff fails to set forth any evidence of it. To the contrary, the

10  arguments suggest that Scottsdale Healthcare accepted payment by plaintiff's insurer

11  as payment in full.

12         Plaintiff also appears to contend that, whether she has an obligation or not, the

13  explanation letter implies that she has an obligation to pay Scottsdale Healthcare, and

14  therefore defendants attempted to collect on a debt. This argument is implied in

15  plaintiff's statements that defendants' "communications . . . misled the sophisticated

16  debtor to believe that she owes a debt" and that "Jodell Gacy believed that she was

17  being dunned for medical bills." Plaintiff's Reply at 8. Plaintiff reduces to footnote

18  status the citation to a series of cases, one of which states in relevant part that

19  "whether the initial communication violates the FDCPA depends on whether it is

20  likely to deceive or mislead a hypothetical least sophisticated debtor." Terran v.

21  Kaplan, 109 F.3d 1428, 1431 (9th Cir. 1997) (quotations omitted). Those cases use

22  the least sophisticated debtor standard to determine whether a debt collector used

23  "false, deceptive or misleading representation[s] or means" or "unfair or

24  unconscionable means," or whether the debtor was provided requisite notice, 15

25  U.S.C. §§ 1692e-g, but those cases do not use the least sophisticated debtor standard

26  to determine whether a debt collector alleged that a consumer had an obligation to pay

27  money. See id.; Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996);

28  Swanson v. Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1227 (9th Cir. 1988).

1    The least sophisticated debtor standard may well be applicable to the inquiry as to

2    whether a debt exists, but plaintiff sets forth no argument for its applicability, and the

3    mere footnote citation to those cases, without explanation, is insufficient to make the

4    contention.

5         None of plaintiff's arguments are sufficient to show that defendants were

6    collecting on a "debt," as defined by the FDCPA.[2]  Therefore, we grant defendants'

7    motion for summary judgment (doc. 42) and deny plaintiff's motion for summary

8    judgment (doc. 51).

**IV**

10        In our Order dated May 2, 2005 (doc. 13), we set forth a series of questions

11   with regard to the state lien statute.  The parties failed to address those questions, and

12   accordingly failed to fully clarify the effects of the lien statute.  Moreover, plaintiff

13   failed to set forth several fundamental aspects of her claim, including the contract

14   under which direct contractual liability would be premised, any argument as to the

15   standard under which we would evaluate whether defendants alleged that plaintiff

16   owes Scottsdale Healthcare money, the legal basis for concluding that plaintiff's debt

17   is in default, or any explanation as to the origin of $668.29.  We are thus left to

18   resolve the motions for summary judgment in a vacuum, blinded to many potential

19   relevant considerations.

20        Defendants' explanation letter is confusing and defendants would be well

21   advised to revise it.  Moreover, we recognize plaintiff's sense of frustration upon

22   receipt of the lien notice and letter of explanation.  The statute is not intuitive and the

23   letter worsens the matter.  Although this case has afforded us no opportunity to

24

25

26   [2] We are however puzzled as to why defendants would accept payment from other
     injured persons when those persons are not subject to the lien. Plaintiff's Statement of Facts,
27   Appendix C at 41-42.  At all events, we need not confront that issue here because it is not
     relevant to whether plaintiff is indebted to Scottsdale Healthcare, and plaintiff does not set
28   forth a claim for conversion.

1   answer unanswered questions, perhaps another case would provide the vehicle to do

2   so.

3          Accordingly, **IT IS ORDERED GRANTING** defendants' motion for

4   summary judgment (doc. 42), and **DENYING** plaintiff's motion for partial

5   summary judgment (doc. 51).

6          **IT IS FURTHER ORDERED DENYING** as moot plaintiff's motion to

7   compel discovery (doc. 47).

8          **IT IS FURTHER ORDERED**, pursuant to Rule 23(c)(1)(C), Fed. R. Civ.

9   P., **VACATING** the Order certifying this action as a class action.

10         Counsel for plaintiff shall give notice of this order to all persons to whom

11  notice of this class action has been given and satisfy any other duty that may be

12  indicated as a result of this order.

13         DATED this 23rd day of February, 2006.

14

15                              _Frederick J. Martone_
                                Frederick J. Martone
16                              United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28